CASE 15—INDICTMENT—JUNE 24.

# Barring vs. Commonwealth.

APPEAL FROM KENTON CIRCUIT COURT.

1. The city authorities of C. elevated the grade of the street six feet above the natural surface of defendant's adjacent lot, and the owner of an adjoining lot on the side of the natural drainage filled his lot to correspond with the street, neither the city nor the owner of adjacent lot making any provision for the escape of the water from defendant's lot, in consequence of which, the water accumulated into a putrid and noxious pond. *Held*—That these facts did not render the defendant liable for keeping and permitting a nuisance.

2. In order to render one responsible for a nuisance, it is necessary to show that he had some agency in its creation; or, that he had done some act procuring or causing its continuance, or omitted some duty in regard to it which he was legally bound to perform.

CHIEF JUSTICE SAMPSON DELIVERED THE OPINION OF THE COURT:

The indictment charges that appellant did unlawfully keep and permit to be and remain in and upon a certain piece or lot of ground to him, the said J. W. Barring, belonging and in his possession then and there, being a certain pond of putrid, filthy, noxious, and stagnant water, by and from which divers hurtful, pernicious, and unwholesome smells did arise, corrupting the air, to the common nuisance of the citizens there residing, &c.

Upon the trial, the court instructed the jury, that, if they believed, "from all the evidence in the case, that the defendant was the owner and in the possession of the lot upon which the pond was situated at the time of the finding of the indictment, and that by reason of the water standing on said lot that noxious and unhealthy odors arise therefrom, rendering the air impure and unhealthy, then they will find the defendant guilty," &c.

This instruction can only be sustained upon the grounds that the appellant had some agency in the creation of the pond, and on that account responsible for its continuance, or that he must have done some act procuring or causing its continuance, or omitted some duty in regard to it which he was legally bound to perform.

Neither of these assumptions can be maintained by the proof in the cause.

It is perfectly clear that the pond was created by the action of the city authorities of Covington raising the street upon which said lot is situated some six feet above the natural surface, thereby elevating it that much above the level of the lots adjoining it, and having no outlets and providing no culverts for the escape of the water that would accumulate on the lots. The holder of the lot adjoining appellant's on the north (the direction of the natural drainage of his lot), had filled up his lot to the level of the street,

Barring vs. Commonwealth.

and had thereby changed the location of the pond from his lot to Barring's. None of these acts were procured by appellant, or, so far as the proof shows, sanctioned by him, nor can he be held responsible for their consequences. He had no agency, direct or indirect, in the creation of the pond.

It is equally clear that appellant did no act procuring or causing the continuance of the pond; on the contrary, the proof tends to show that he was desirous to remove it by filling the lot, but could not do so by reason of the occupancy of a lot by a tenant that he could not remove; that he had gone so far as to offer to rent another house for the tenant, in order to get possession of the property, remove the house, and fill the lot, and thereby remove the pond. These facts are proved by the statements of appellant, introduced by the Commonwealth. Was there, then, any duty in regard to the pond, which appellant was bound to perform, which he neglected, on account of which he could be held responsible for its continuance? We think not.

There were but two ways in which the pond could be removed—by drainage or by filling the lot; the former was not within the power of appellant; he could not open an outlet for the water through the street; that could only be done by the city authorities of Covington; and he had no right to any such outlet through the property of any of the adjoining lot-holders. To remove the pond by filling the lot would require a considerable expenditure of money, for the lot was 190 feet long and 23 wide, and the fill was six feet deep; and such expenditure may have been beyond his means; and even if it were not, we know of no principle that made it his duty to incur such an expense, when he was not responsible for the state of case which rendered such elevation of the natural surface of his lot desirable and proper. The lot was at its natural surface; the house upon it was built upon that surface, and he had done nothing to make the continuance of it in that condition a source of annoyance to others.

The instruction of the court was, therefore, wrong; but even if the instruction were right, the finding of the jury is

against the instruction and the proof on the question of possession.

We think it perfectly clear that the possession of the lot was in the tenant, Lightman, whose family had resided upon it since 1860. According to the well-settled principles of law, his possession would extend to the boundaries of the lot, unless there was something to show it was more restricted.

The judgment is, therefore, reversed, and the cause remanded, with directions to grant a new trial, and for proceedings not inconsistent with this opinion.